DLD-229                                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4527
_____

BUWLUS A. MUHAMMAD,

Appellant

v.

US MARSHALS SERVICE; MARSHALL BILL DOE (LNU);
DEPUTY WARDEN VINCENT KANNINE; ATTY. DAVID A. SCHROEDER

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 07-00027)
District Judge:  Honorable Maurice B. Cohill

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 24, 2010

Before: FUENTES, JORDAN and HARDIMAN, Circuit Judges

(Opinion filed:  June 30, 2010)
_____

OPINION
_____

PER CURIAM

Following a Pennsylvania conviction for terroristic threats, Buwlus Muhammad

began serving his sentence of 18-60 months at SCI-Smithfield.  In July 2005, Muhammad

was transferred, pursuant to a federal writ of habeas corpus ad prosequendum issued by the District Court, to Erie County Prison to face federal criminal charges. Muhammad filed this civil rights suit in February 2007 against various individuals for constitutional violations he believed occurred as a result of the temporary transfer to Erie County Prison.[1]

The District Court granted the U.S. Marshals Service's motion to dismiss the complaint on sovereign immunity grounds. Later, it granted U.S. Marshal Bill Doe's motion to dismiss on absolute quasi-judicial immunity grounds. Finally, the District Court granted the motions for summary judgment filed by Vincent Kannine, who was then Deputy Warden at Erie County Prison, and David Schroeder, who was Muhammad's court-appointed attorney. Muhammad appealed.[2]

By Clerk's order dated April 12, 2010, we granted Muhammad leave to proceed in forma pauperis (IFP) on appeal and directed the warden at SCI-Cresson (Muhammad's current place of incarceration) to begin periodic withdrawals from Muhammad's inmate

---

[1] The District Court summarized Muhammad's allegations as follows: "Plaintiff maintains that as a result of this unlawful incarceration at Erie County Prison . . . he has suffered harm which constitutes atypical and significant hardship . . . [including] being classified as a maximum security prisoner; being ineligible for reassignments or transfer to less than maximum security and trustee status; being ineligible for study release and work release programs . . . [and] that due to his unusual status, he has not received needed dental and medical care during this period."

[2] We have jurisdiction under 28 U.S.C. § 1291.

trust account in order to cover the $455 filing fee.[3]  After the initial withdrawal,

Muhammad moved in this Court "to discontinue the deduction fee [sic], and further order

the Clerk of Court's office for the Western District of PA to reimburse all money to

Plaintiff's prison account."  In an order dated May 6, 2010, the Clerk deferred ruling on

the motion and warned Muhammad that he would be required to pay the full $455 fee in

installments even if the appeal was voluntarily dismissed.  See Porter v. Dept. of

Treasury, 564 F.3d 176, 179 (3d Cir. 2009) ("It is of no consequence whether an appeal is

voluntarily dismissed, dismissed due to a jurisdictional defect, or dismissed on the merits

- appellants are not entitled to the return of their filing and docketing fees.").  Muhammad

was also directed to notify this Court whether he wished to proceed with his appeal

despite the warning.

Muhammad responded to the May 6, 2010 Clerk's order by filing a "motion for

injunctive relief and a restraining order," claiming that "[t]he administrative procedural

means of deducting 20% from Plaintiff's personal funds and prison account cause a

substantial atypical and significant hardship."  Muhammad attached to his motion a May

2010 trust account statement, which indicated that the warden's most recent withdrawal

caused Muhammad's account to have a negative balance.  Muhammad stated in his

---

[3] Having granted Muhammad leave to proceed in forma pauperis, we must dismiss his appeal pursuant to 28 U.S.C. § 1915(e)(2)(B) if it has no arguable basis in law.  See Neitzke v. Williams, 490 U.S. 319, 325 (1989).  Alternatively, we may summarily affirm the District Court's judgment if Muhammad's appeal fails to present a substantial question.  See LAR 27.4; I.O.P. 10.6.

3

motion that he "realizes that he must pay for the filing fee cost," but that he should nonetheless "have the right to manage and control his personal funds in a way that would allow him to preserve his dignity and responsibilities."

We infer from Muhammad's filing that he wishes to pursue his appeal. Before addressing the merits of the appeal, we will explain why we must deny both Muhammad's motion to discontinue IFP fee deductions, and his related request for injunctive relief.

Under the Prison Litigation Reform Act, Pub. L. No. 104-135, 110 Stat. 1321 (April 26, 1996) (the PLRA), all prisoners who file IFP civil actions must pay the associated filing fees. 28 U.S.C. § 1915(b)(1). Relevant to this case, "the fee for docketing an appeal is $455, which is paid to the district court." Porter, 564 F.3d at 179. "Payment of the full fee may be spread over a number of monthly payments." Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009). In that scenario, an initial partial fee is assessed based on one of two alternative metrics, and "when funds exist" in the assessed amount they are collected from the prisoner's account by the warden. 28 U.S.C. § 1915(b)(1). Thereafter, "the prisoner must make monthly payments equal to 20 percent of the preceding month's income credited to the account to be forwarded when the prisoner's account balance exceeds ten dollars." Taylor v. Delatoore, 281 F.3d 844, 847 (9th Cir. 2002) (citing 28 U.S.C. § 1915(b)(2)).

As mentioned above, the initial partial fee was collected in April 2010. At the end of the following month, Muhammad had an account balance of $23.04. Because the

4

balance exceeded ten dollars, the warden at SCI-Cresson collected a previously assessed amount of $25.07, resulting in a negative account balance. Muhammad contends that the warden should not be able to overdraft his account, and that because of the warden's account withdrawals Muhammad is being deprived of his ability to pay for phone calls, cable, postage, photocopies, and the like.

We first note that Muhammad's May 2010 account statement indicates that he spends the majority of his money at the prison commissary. Before initiating a lawsuit or an appeal, the PLRA counsels that Muhammad must weigh the costs of litigation against his desire to frequent the prison commissary. See, e.g., Murray v. Dosal, 150 F.3d 814, 818 (8th Cir. 1998) ("The [PLRA's] fee requirements provide economic incentives that require prisoners to 'stop and think' before filing suit.") (citation omitted). In addition, there is nothing in the PLRA that prevents a warden from withdrawing funds from an inmate account, after the initial partial fee is collected, so long as there is a balance of at least $10.01. It is Muhammad's duty, not the warden's, to ensure that he maintains an account balance sufficient to make the monthly payments. See Lucien v. DeTella, 141 F.3d 773, 776 (7th Cir. 1998). For these reasons, Muhammad's motion to discontinue IFP fee deductions and his request for injunctive relief are denied.

Turning to the merits of Muhammad's appeal, we conclude that it presents no substantial question and that the District Court's judgment should be summarily affirmed. The District Court did not err in granting the U.S. Marshals Service's motion to dismiss

5

on sovereign immunity grounds, as no waiver of the agency's absolute immunity from suit was present. See Beneficial Consumer Discount Co. v. Poltonowicz, 47 F.3d 91, 94 (3d Cir. 1995) ("an agency of the United States[] is . . . shielded from private actions unless sovereign immunity has been waived."). The District Court also did not err in granting Doe's motion to dismiss on immunity grounds for his role in effectuating the federal writ of habeas corpus ad prosequendum. See Hamilton v. Leavy, 322 F.3d 776, 782-83 (3d Cir. 2003) (An "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages."). Finally, the District Court did not err in granting the motions for summary judgment filed by Kannine and Schroeder. Both Kannine or Schroeder are immune from suit for their roles in having Muhammad transferred to Erie County Prison. See id. And for substantially the reasons given in the October 27, 2009 memorandum opinion, the undisputed material facts of this case do not demonstrate the existence an Eighth Amendment violation (based on alleged medical neglect) attributable to Kannine.

Accordingly, we will summarily affirm the judgment of the District Court.